[Civ. No. 1484. Fourth Appellate District.—December 6, 1934.]

ESPERANZA COVERRUBIAS et al., Respondents, v. A. P. M. BROWN, Appellant.

Forgy, Reinhaus & Forgy for Appellant.

Burke & Colwell and West & West for Respondents.

BARNARD, P. J.—A Chevrolet automobile owned by Juan Gonzales and driven by his brother Basilio Gonzales

collided with an Oldsmobile automobile driven by the appellant Brown on April 23, 1932, at the intersection of Placentia Avenue and Center Street near the city of Anaheim. George Coverrubias, a passenger in the Chevrolet, was killed in the collision and Jesus Coverrubias, another passenger, was injured. This action for damages was brought by the mother of the deceased, by the owner of the car and by the injured passenger, who was a minor. After a trial without a jury the court found that the defendant was guilty of negligence which was a proximate cause of the accident, that the driver of the other car was also guilty of negligence, and that the deceased and the minor plaintiff were not guilty of contributory negligence. This appeal is from a judgment entered in favor of the mother and the minor plaintiff.

■ The only question requiring consideration is whether findings to the effect that the appellant was guilty of negligence which was a proximate cause of the accident, are sustained by the evidence. No substantial conflict appears in the evidence in so far as material matters are concerned.

Placentia Avenue runs north and south. Center Street comes into it from the southwest at slightly less than a 90-degree angle, but does not extend beyond Placentia Avenue. The paved portion of each street is about 18 feet wide. The intersection was entirely surrounded by orange trees, except for a garage and service station at the northwest corner. At the time of the accident, which happened shortly after 9 o'clock at night, the Chevrolet car containing the three boys, all of whom had been drinking and one of whom was moderately drunk, was coming south on Placentia Avenue while the appellant's car, which had been coming east on Center Street, was making a turn to the north on Placentia. The night was clear and the pavement was dry. The appellant testified that as he approached the intersection he was driving on the right-hand or southerly side of Center Street; that he checked his speed and was almost stopped as he arrived at the intersection; that as he entered the intersection he looked both ways and saw the Chevrolet car coming; that that car was then about 50 feet north of a 15-mile speed limit sign on Placentia Avenue, which sign was 300 feet north of the intersection; that he gave a left turning signal, shifted into second gear and proceeded to cross toward the easterly edge of

Placentia Avenue; that after passing the center of Placentia Avenue he commenced to turn north and noticed that the other car was then 70 feet north of the intersection; that the Chevrolet had then commenced to swing to the easterly side of Placentia Avenue; and that he then applied his brakes and had come to a stop when the collision occurred.

While some of the witnesses testified that the appellant's car was still moving at the time it was struck by the Chevrolet, it was either stopped or nearly so and whether or not it was moving at the time is not material here. It appears, without conflict, that there was no stop sign at this intersection; that the appellant had crossed to the east side of Placentia Avenue; that his automobile was on the extreme east portion of the pavement with the right front wheel on the shoulder at the time he was struck; that the collision occurred on the appellant's right-hand side of Placentia and at a point almost exactly opposite the north line of Center Street; that there were no skid marks behind the Oldsmobile; that the Chevrolet had skidded with locked brakes a distance of 55 feet before the point of the impact; that the Chevrolet had crossed over almost to the east edge of the pavement on Placentia Avenue where the impact occurred; and that it then struck the Oldsmobile with sufficient force to shove that car 10 or 12 feet in a southerly direction, at which point the Chevrolet overturned.

The driver of the Chevrolet admitted that he passed over to his wrong side of the street, where the collision occurred. This driver testified that he saw the appellant's car several hundred feet before it arrived at the intersection; that it was then going about 25 miles an hour; and that he then pulled over to the east side of the road because he thought the appellant would be unable to stop. While he testified at one time that he was 30 feet from the intersection, and at another time that he was 100 feet away, when he first saw the other car, he stated very positively that he was unable to estimate distances and always came back to the statement that he knew that he was farther north than the 15-mile sign when he saw the other car. It appears without conflict that this 15-mile sign was 300 feet north of the intersection. The driver of the Chevrolet further testified that he did not put on his brake immediately after he saw the other car, but that when he did put on the brake he was only going 15 miles an hour.

Officers and other witnesses testified that his skid marks were 55 feet long, that they began on the westerly side of Placentia Avenue, some 50 or 60 feet north of the intersection, and proceeded in a slanting direction to the point of impact near the easterly side of Placentia Avenue.

In support of the judgment the respondents contend that the appellant's testimony to the effect that he saw the other car when his own front wheels were about even with the west line of Placentia Avenue and that he then proceeded at a low rate of speed across to the east side of Placentia Avenue is, in itself, sufficient to show negligence which is a proximate cause of the accident. This argument leaves out of consideration the position of the other car at that time and it is apparent that this evidence alone is not sufficient to sustain these findings. The respondents also rely upon the evidence of two witnesses who were at the time coming along Center Street in an automobile, being about 600 feet west of the intersection at the time the collision occurred. Their testimony was to the effect that the appellant's car was moving at the time of the collision. As we have already pointed out, this fact is immaterial. These witnesses also testified that immediately before the impact they observed the lights of the appellant's car reflected on the side of the Chevrolet. While it is argued that this indicates that the Chevrolet must have been practically at the intersection when the appellant pulled into that street and started to make his left-hand turn, it is at once apparent that this testimony can relate only to the position of the cars for a split second before the impact and that it throws no light on how or when they got into that position. The impact occurred near the north side of the intersection and since the Chevrolet was proceeding at an angle toward the easterly side of Placentia Avenue and since the appellant's car was at that time on the east half of Placentia and facing in a northerly direction, the appellant's lights would be reflected on the side of the other car, although the time during which this could be seen by these witnesses, who were 600 feet back on a road lined with orange trees, would be very brief. However, these witnesses did not claim to have seen this for any length of time and it is apparent from their testimony that they saw the same just as the collision occurred. We see nothing in the testimony of these witnesses to justify the

inference that the Chevrolet was practically entering the intersection at the time the appellant entered the same. This is especially true in view of the evidence given by the driver of the Chevrolet as to his position when he first saw the appellant's car, that he did not apply the brakes at once and that he later applied them, with the other evidence of the position and length of the skid marks made by that car and of the force with which the Oldsmobile was struck. The respondents further rely on testimony given by the appellant's wife to the effect that the Chevrolet was just out of the intersection when she first saw it. She was riding with the appellant and she testified that when she first saw the Chevrolet that car was coming over to the east side of the road and that very nearly immediately after she observed it her husband brought his car to a stop. The fact that she did not observe the Chevrolet until it had started over toward the east side of Placentia Avenue and at a time when the appellant's car was already on the east side of that street, if of any value at all, is some indication that the Chevrolet was not very close to the intersection at the time the respondents entered the same and made the turn, a fact which appears without real conflict in the other evidence. Great reliance is also placed upon the testimony of another witness to the effect that she heard the appellant's wife ask him after the collision whose fault it was and that the appellant replied ''Well, we were going pretty fast, my dear.'' Accepting this as true, although denied by the appellant, under the circumstances here appearing this produces no substantial conflict in the evidence upon the essential question here, when it appears without substantial conflict that the other car was more than 300 feet away at the time the appellant entered the intersection.

Aside from the suggestion of speed, last referred to, the only negligence attributed to the appellant by the respondents is that he entered the intersection when he saw another car coming. If it can be said to have been negligence for the appellant to have entered this intersection when he saw another car more than 300 feet away or in ''going pretty fast'' while so doing, we are unable to see how either of these could be · held to have been a proximate cause of the accident under these circumstances. The appellant had practically completed his turn and was proceeding north

on his right side of the road when he was struck by the other car which was on its wrong side of the road. If, as claimed by the respondents, the Chevrolet was entering the intersection as the appellant's car entered the same, the collision could hardly have taken place where it did, and the appellant could hardly have crossed over to the east side of Placentia and arrived at a point near the north side of the intersection at the time of the impact. There is nothing to justify the inference that the two cars entered the intersection at about the same time, and the only inference which can reasonably be drawn from the evidence is that the Chevrolet was a considerable distance from the intersection at the time the appellant's car entered the same, and that it was traveling at a high rate of speed. If it be conceded that there is any evidence at all to show negligence on the part of the appellant, we are unable to see how any such negligence could, under the evidence, have been a proximate cause of the accident. The collision occurred not because of how or when the appellant arrived on his proper side of Placentia Avenue, but because of the negligence of the other driver which resulted in his being on the wrong side of the road, without adequate cause or reason therefor. The court found that the driver of the Chevrolet was negligent and we find no evidence in the record to justify an inference that such negligence was not the sole cause of the accident. In our opinion, the evidence is not sufficient to support a finding that any negligence of appellant was a proximate cause of the accident.

The appellant's further contention that the evidence shows contributory negligence on the part of the two passengers, which contention is based upon the claim that they knew prior to the accident that the driver of the Chevrolet was so under the influence of liquor as not to be able to drive properly, is not sustained by the evidence.

For the reasons given the judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 4, 1935.